IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JAMES REDDY SUMMERS and** | § | |
| **DIEDRE DENAE SUMMERS**, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-01235-L** |
| | § | |
| **PENNYMAC CORP.,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion to Dismiss, filed May 14, 2012.  After carefully reviewing the motion, briefing, pleadings, and applicable law, the court **grants** Defendant's Motion to Dismiss and **dismisses** this action **with prejudice**.

**I.      Background**

Plaintiffs Deidre and James Summers (collectively, "Plaintiffs") originally filed this action against Defendant PennyMac Corp. ("PennyMac") on March 27, 2012, in the 68th Judicial District Court, Dallas County, Texas, asserting a claim to quiet title and seeking a declaratory judgment. Plaintiffs' claims stem from PennyMac's initiation of foreclosure proceedings on their residential property located at 1209 Post Oak Lane, Desoto, Texas, 75115.  PennyMac removed the case to federal court on April 23, 2012, based on diversity jurisdiction.

Prior to filing this action, Plaintiffs executed a "Texas Home Equity Note (Fixed Rate - First Lien)" ("Note") on April 27, 2007, payable to Dallas Home Loans, Inc. for $140,000.  The Note and Plaintiffs' payments under the Note were secured by a "Texas Home Equity Security Instrument

(First Lien)" ("Security Instrument") executed by Plaintiffs on the same date. The Security Instrument designated Dallas Home Loans, Inc. ("DHLI") as the lender and Dennis P. Swartz ("Swartz") as the trustee with the "power of sale" for Plaintiffs' property. Def.'s App. 7-9. In support of their loan application, Plaintiffs were required under the Security Instrument to execute a sworn Texas Home Equity Affidavit and Agreement ("Home Equity Affidavit") as to the fair market value of their property. *Id.* 14, ¶ 8; 22, ¶ 27; 26, ¶ E.

On May 3, 2007, DHLI assigned Plaintiffs' mortgage to CitiMortgage, and on January 6, 2011, CitiMortgage assigned the mortgage to PennyMac, who sought to foreclose on the property because of to Plaintiffs' alleged failure to make payments under the Note. The parties dispute whether PennyMac is entitled to foreclose on the property. PennyMac contends that it is entitled to dismissal of Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     Standard for Rule 12(b)(6)—Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the

plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

## III.    Analysis

### A.    Suit to Quiet Title

PennyMac contends that Plaintiffs' Original Petition ("Petition") contains no factual allegations regarding their ownership and superior title to the property and instead relies on the alleged weaknesses of PennyMac's title.  Plaintiffs argue in response that their claim is one to quiet title, not trespass to try title, and while it is true that a plaintiff must allege and prove superior title in trespass to try title actions, this is not a requirement or element in suits to quiet title. Plaintiff misunderstands Texas law as to quiet title claims.

In a suit to quiet title, a plaintiff must allege "a right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove."  *Hahn v. Love*, 321 S.W.3d 517, 531

(Tex. App.   Houston [1st Dist.] 2009, pet. denied).   The plaintiff has the burden ultimately of establishing his "superior equity and right to relief."   *Id.* at 532.   Thus, like a trespass to try title action, a plaintiff in a suit to quiet title "must base his action on the strength of his own title." *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.   Corpus Christi 1977, writ ref'd n.r.e.) (citing *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705 (5th Cir. 1951), *cert. denied*, 342 U.S. 920 (1952)).

Here, Plaintiffs allege in conclusory fashion that they "own," the property and "have possession of it," and that "The Security Instrument . . . constitutes a cloud on the Summers' title to their home, the Property, [and] is invalid and unenforceable." Pls.' Orig. Pet. 2, § V; 6.  Plaintiffs, however, do not allege facts which, if proved, would establish their superior title; nor do they allege that they are current on their mortgage payments.[1]  Instead, they challenge PennyMac's title by arguing that PennyMac lacks authority to enforce the Note at issue and foreclose on the property. Plaintiffs' quiet title claim therefore fails as a matter of law, and PennyMac is entitled to dismissal of this claim.

### B.    Declaratory Judgment

Plaintiffs seek a declaratory judgment under the Texas Uniform Declaratory Judgments Act with regard to PennyMac's authority to foreclose on the property.  Plaintiffs also seek a declaration that PennyMac would be unjustly enriched if permitted to foreclose.  With regard to the former, Plaintiffs contend that PennyMac lacks authority to foreclose because: (1) PennyMac does not own

---

[1] Plaintiffs contend in response to PennyMac's motion to dismiss that "Texas pleading rules expressly allow legal conclusions, so long as the allegations as a whole give fair notice." Pls.' Resp. 1-3.  Plaintiffs misconstrue the standard applicable to motions to dismiss for failure to state a claim.  PennyMac's motion to dismiss and the sufficiency of Plaintiffs' pleadings are governed by the Federal Rule of Civil Procedure Rule 12(b)(6) and related federal case law, not Texas law.  Moreover, as previously noted, under *Iqbal* and *Twombly*, claims based on conclusory allegations unsupported by facts are insufficient to withstand dismissal under Rule 12(b)(6).

or possess the Note; (2) the Security Instrument and Note were "split"; (3) the Note and Security Instrument were not lawfully transferred to PennyMac; (4) securitization of the Note affected PennyMac's right to ownership; (5) the Note violates the Texas Business and Commerce Code; and (6) the Note violates the Texas Constitution.  Pls.' Orig. Pet. ¶ 2-5.A-I.

PennyMac contends that Plaintiffs' request for declaratory relief is based on flawed legal theories that are not supported by Texas law.  PennyMac further contends that Plaintiffs' claims are inadequately pleaded and not supported by the property records that form the basis of their claims. In addition, PennyMac asserts that Plaintiffs lack standing to challenge any assignment of the Note or Security Instrument.

Federal "district courts cannot award relief pursuant to the Texas Declaratory Judgment Act ("TDJA") because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules." *Falk v. Wells Fargo Bank*, No. 3:09-CV-678-B, 2011 WL 3702666, *4 (N.D. Tex. Aug. 19, 2011) (citing *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)) (internal quotation marks omitted).  Because this action was removed from state court, "the action may be construed as one brought under the federal Declaratory Judgment Act." *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1081994, at *17 (N.D. Tex. Mar. 12, 2012), *report and recommendation accepted by* 2012 WL 1106932 (N.D. Tex. Mar. 29, 2012).

The federal Declaratory Judgment Act ("FDJA") allows a federal court to declare the rights and legal relations of an interested party. *Hurd*, 2012 WL 1081994, at *17.  The availability of a declaratory judgment, however, "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Like the TDJA, the FDJA is a procedural device that creates no substantive rights. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).

Consequently, the FDJA provides no relief unless there is a justiciable controversy between the parties. *See id.* A plaintiff seeking injunctive or declaratory relief must therefore allege a "substantial and continuing" controversy:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative, threat of future injury.
>
> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgment.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted). Thus, "a declaratory judgment is merely a form of relief that a court may grant based on an underlying claim." *DeFranceschi v. Wells Fargo Bank, N.A.,* 837 F. Supp. 2d 616, 626 (N.D. Tex. 2011) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990)).

### 1.      "Show-Me-the-Note" Theory

Plaintiffs contend that PennyMac cannot enforce the Note and Security Instrument because it has yet to prove that it actually possesses the original Note. PennyMac responds that it qualifies as a mortgagee under the Texas Property Code and therefore has authority to foreclose on the property. PennyMac further asserts that although Texas law does not require a mortgagee to hold or produce the original note in order to foreclose, it has produced the Note and possesses the Note,

which was endorsed in blank by CitiMortgage.  For support that a holder of a note includes a party

in possession of a note endorsed in blank, PennyMac cites *Bittinger v. Wells Fargo Bank, N.A.*, No.

H-10-1745, 2011 WL 3568206, at *4 (S.D. Tex. Aug. 15, 2011), which in turn cites sections

3.205(b) and 3.301 of the Texas Business and Commerce Code.  Plaintiffs acknowledge that an

instrument endorsed in blank is enforceable under Texas law by the holder of the instrument but

contends that PennyMac has not shown that it is the holder or possessor of the original note.

The Texas Property Code permits either a mortgagee or mortgage servicer to administer a

deed of trust or contract lien foreclosure without production of the original note.  *See Crear v. JP*

*Morgan Chase Bank, N .A.*, No. 10  10875, 2011 WL 1129574, at *1, n.1 (5th Cir. Mar. 28, 2011)

(unpublished, per curiam) (citing Tex. Prop. Code Ann. §§ 51.002 & 51.0025 (West 2007)).

Accordingly, production of the original Note is not a prerequisite to PennyMac foreclosing on the

property if it qualifies as a mortgagee.  The Property Code defines "mortgagee" as "the grantee,

beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned

of record, the last person to whom the security interest has been assigned of record." *Id.* §

51.0001(4)(A),(C).

In support of its motion to dismiss, PennyMac submitted copies of the Note, Security

Instrument, Home Equity Affidavit, and assignments to CitiMortgage and PennyMac.  Def.'s App.

A-E.   Because these documents form the basis of Plaintiffs' claims and were referred to in the

Petition, with the exception of the Home Equity Affidavit, they qualify as part of the pleadings, and

the court may consider them in ruling on PennyMac's motion to dismiss.  *Collins*, 224 F.3d at

498-99.   In ruling on Plaintiffs' "show-me-the-note theory," the court does not take into

consideration the Home Equity Affidavit. The remaining documents show that PennyMac is the

beneficiary and last entity to whom the Security Interest was assigned.  PennyMac therefore qualifies as a mortgagee with authority to foreclose on Plaintiffs' property and, contrary to Plaintiffs' assertion, production of the original Note is not a prerequisite to PennyMac's foreclosure on Plaintiffs' property.  The court therefore determines that Plaintiffs' request for declaratory judgment, based on their "show-me-the-note" theory, fails as a matter of law and will be dismissed.

2.      **"Split-the-Note" Theory**

Plaintiffs contend that PennyMac lacks authority to foreclose because the Security Instrument and Note were "split."  PennyMac, on the other hand, maintains that the "split-the-note" theory has been universally rejected by Texas courts and district courts.  Plaintiffs respond that PennyMac's use of the word "universally" is an overstatement because there are at least two courts that have accepted the concept.  For support, Plaintiffs cite *McCarthy v. Bank of America, NA*, No. 4:11-CV-356-A, 2011 WL 6754064, at *4 (N.D. Tex. Dec. 22, 2011), and *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. Ct. App. 2009), which was quoted by *McCarthy*.

The *McCarthy* court concluded that, because the note and deed of trust are inseparable, the defendant did not have the authority to foreclose pursuant to the deed of trust transferred to it by Mortgage Electronic Registration Systems, Inc. if it did not also own the note.  *McCarthy*, 2011 WL 6754064, at *3.  While not *every* court in the United States has rejected the "split-the-note" theory, the theory, without doubt, has enjoyed only a modicum of acceptance.  *McCarthy*'s reasoning and the "split-the-note" theory have not been embraced by Texas state courts and federal courts that have addressed the issue and interpreted Texas law.  *Casterline v. OneWest Bank, F.S.B.*, No. CA C-12-150, 2012 WL 5465982, at *7 (S.D. Tex. Oct. 10, 2012) (collecting cases).  Accordingly,

Plaintiffs' request for declaratory judgment, based on their split-the-note theory, fails as a matter of law and will be dismissed.

### 3.    Transfer of Property to PennyMac

Plaintiffs contend that the Note and Security Instrument were not lawfully transferred and assigned to PennyMac. Plaintiffs further argue that PennyMac does not have standing or legal right to declare a default in payment of the Note and conduct a nonjudicial foreclosure sale of the property. Plaintiffs therefore contend that PennyMac has not lawfully acquired the property and that they are entitled to a declaratory judgment in this regard.  The court disagrees.

As previously discussed, the  record reflects that PennyMac is the beneficiary and last entity to whom the Security Interest was assigned.  Moreover, the Note and Security Instrument provide the lender and trustee with the power to enforce the Note and sell the property if Plaintiffs default. As assignees of the Security Instrument, CitiMortgage and later PennyMac acquired the right to enforce the Note and foreclose on the property.  *See Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *3 (N.D. Tex. July 7, 2011).  Accordingly, Plaintiffs' request for declaratory judgment, based on the transfer of the Note and Security Instrument to PennyMac, fails as a matter of law and will be dismissed.

### 4.    Securitization of the Note

Regarding securitization of the Note, Plaintiffs contend that: (1) Because the lender sold the receivables under the Note prior to the assignment to PennyMac, PennyMac never gained ownership of the debt; (2) Because the lender received "99% of face value for the Note receivables," the Note has already been paid; and (3) The collateral followed the debt during securitization such that the later assignment to PennyMac failed to transfer the Security Instrument.  Pls.' Orig. Pet. ¶ 3, B.

"Securitization" refers to the "process of pooling loans and selling them to investors on the open market." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011).

PennyMac responds that: (1) Plaintiffs' allegations in this regard are conclusory and inadequately pleaded; (2) Plaintiffs' allegations are without merit because they arise from a misunderstanding of provisions within the Note and Security Instrument; and (3) Plaintiffs lack standing to challenge the securitization or assignments of the Note. PennyMac further contends that even if the Note was securitized, it would have no impact and would not relieve Plaintiffs from their obligation to make payments under the Note because securitization alters only the party to whom Plaintiffs were required to make payments and did not result in the Note being paid off or terminate Plaintiffs' obligations. PennyMac therefore argues that Plaintiffs, not PennyMac, would be unjustly enriched if permitted to escape their obligations under the Note based on their argument that a sale of receivables on the Note extinguished their obligation to make payments. Even if Plaintiffs' interpretation of the securitization process is accepted, PennyMac contends that "Plaintiffs' argument that their obligations under the Note and Security Instrument should be released or that the Note has been 'collected' still fails because any third party to whom the Note and Security Instrument was allegedly sold would be equitably subrogated to PennyMac's interest in the Note and Security Instrument." Def.'s Mot. 14, n.7.

Plaintiffs contend in response to PennyMac's standing argument that the rule regarding a homeowner's lack of standing to challenge an assignment, which was first set forth in *Eskridge v. Federal Home Loan Mortgage Corp.*, W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24,

2011), is a judicially created rule that is not supported by authority but instead was "created out of whole cloth and became chain mail, but an empty suit."  Pls.' Resp. 5.

In the past two years, many courts have held that a borrower lacks standing to challenge the assignment of a note and a mortgagee's authority to enforce a note and foreclose on a mortgage based on securitization of the mortgage.  *See Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *4 (N.D. Tex. June 26, 2012) (collecting cases); *In re Walker*, 466 B.R. 271, 284-85 nn.28-29 (Bankr. E.D. Pa. 2012) (collecting cases and noting that "[A] judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement.").  The court therefore agrees that Plaintiffs, who are not parties to or beneficiaries of the alleged assignments and securitization, lack standing to challenge the assignment of the Note and PennyMac's authority as mortgagee to enforce the Note and Security Instrument and foreclose on the property based on securitization of the mortgage.

Moreover, the Note provides that Plaintiffs "will be in default" upon failure to make timely payments. Def.'s App. 3, ¶ 6.  The Security Instrument contains a "Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply" provision that states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument, and applicable Law. There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan

Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

Def.'s App. 18, ¶ 19. This paragraph of the Security Instrument not only provides for but contemplates assignment of interests under the Note that results in a change of the party entitled to receive Plaintiffs' payments but does not otherwise affect Plaintiffs' obligations to make payments under the Note. *Id.* Furthermore, neither the terms of the Note nor those of the Security Instrument prohibit securitization. The court therefore concludes that any securitization of Plaintiffs' Note did not affect their obligations under the Note or PennyMac's authority as mortgagee to enforce the Note and foreclose on the property if Plaintiffs defaulted. Accordingly, Plaintiffs' request for declaratory judgment, based on securitization of the Note, fails as a matter of law and will be dismissed.

### 5.        Texas Business and Commerce Code

#### a.        Negotiability of the Note

Plaintiffs contend that the Note is void as a nonnegotiable instrument because it violates section 3.104(a)(3) of the Texas Business and Commerce Code, which prohibits a note from "stat[ing] any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." Tex. Bus. & Com. Code Ann. § 3.104(a)(3) (West 2011). According to Plaintiffs, the following language in the Note violates section 3.104(a)(3) and resulted in the Note becoming nonnegotiable: "When I make a Prepayment, I will tell the Note Holder in writing that I am doing so." Def.'s App. 3.

PennyMac contends that Plaintiffs' allegations in support of this theory are inadequately pleaded and that several courts have rejected similar arguments. For support, PennyMac relies on *In re Walker*, 466 B.R. 271 (Bankr. E.D. Pa. 2012), in which the court rejected the debtor's argument

that a note requiring her to provide notice of prepayment made the note nonnegotiable. Def.'s Mot. 14 (citing *In re Walker*, 466 B.R. at 282-83). PennyMac notes that the debtor in *Walker* relied on the same law review article as that cited in Plaintiffs' Petition. Def.'s Mot. 14 (citing *In re Walker*, 466 B.R. at 282). PennyMac also cites *Picatinny Federal Credit Union v. Federal National Mortgage Association*, No. 09-1295 (GEB), 2011 WL 1337507, at *7 (D.N.J. Apr. 7, 2011), and *In re Edwards*, No. 11-2505, 2011 WL 6754073, at *5 (Bankr. E.D. Wis. Dec. 23, 2011). The court finds the reasoning of these three cases persuasive and therefore agrees with PennyMac and concludes that the language in the Note requiring Plaintiffs to provide notice of prepayment does not violate section 3.104(a)(3) of the Texas Business and Commerce Code and thus did not affect the negotiability of the Note. Accordingly, Plaintiffs' request for declaratory judgment, based on the alleged nonnegotiability of the Note, fails as a matter of law and will be dismissed.

**b.     Endorsement of the Note**

Plaintiffs also contend that PennyMac is not entitled to enforce the Note under section 3.203(c) of the Texas Business and Commerce Code because it was "never indorsed to [PennyMac]."[2] Pls.' Orig. Pet. 4. ¶ F. PennyMac counters that Plaintiffs' contentions in this regard are not supported by Texas law and are contradicted by the Note, Security Instrument, and assignments. The court agrees.

---

[2] Section 3.203 deals with the transfer of instruments and the rights acquired by transfer. Section 3.203(c) relied on by Plaintiffs provides: "Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made." Tex. Bus. & Com. Code Ann. § 3.203(c).

For the reasons already discussed, the court has determined that PennyMac, as mortgagee, has authority to enforce the Note and foreclose on the property and Plaintiffs lack standing to challenge the assignments.  Moreover, the assignments establish the chain of title from DHLI to CitiMortgage and CitiMortgage to PennyMac.  The assignment to PennyMac, which was signed by CitiMortgage's vice president, states:

> For Valuable Consideration, the undersigned, CITIMORTGAGE, INC. . . . does assign, and set over, without recourse, to PENNYMAC CORP. . . . (Assignee) the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by JAMES REDDY SUMMERS AND WIFE, DEIDRE DENAE SUMMERS to Dallas Home Loans, Inc.. Said mortgage Dated: 4/27/2007.

Def.'s App. 36 (emphasis in original).  Accordingly, Plaintiffs' request for declaratory judgment, based on the alleged violation of section 3.203(c) of the Texas Business and Commerce Code, fails as a matter of law and will be dismissed.

### 6.	Texas Constitution

Plaintiffs contend that the Note violates Article XVI, section 50(a)(6)(B) of the Texas Constitution.  This section states that a homestead will not be protected from a forced sale if it constitutes:

> (6) an extension of credit that: . . . (B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made

Tex. Const. Art. XVI, § 50(a)(6)(B).  Plaintiffs allege "[t]he Note was in principal amount more than 80% of the fair market value of Borrower's homestead on the date of the Note" such that PennyMac has "forfeited all principal and interest under the Note." Pls.' Orig. Pet. ¶ 5.I.  PennyMac alleges that Plaintiffs' argument is improperly pleaded and that Plaintiffs' contention is flatly contradicted by the

Home Equity Affidavit that Plaintiffs executed in support of the Note and Security Instrument. Plaintiffs do not address this argument by PennyMac. Although the Home Equity Affidavit is not mentioned in or attached to Plaintiffs' Petition, Plaintiffs do reference the Security Instrument, which in turn refers to Home Equity Affidavit. Def.'s App. 14, ¶ 8. As the Note, Security Instrument, and Home Equity Affidavit were all part of the loan application process and necessary for approval of Plaintiffs' loan, the court believes that the Home Equity Affidavit executed by Plaintiffs falls within the scope of the pleadings as described by the Fifth Circuit in *Collins* and therefore considers the document in deciding PennyMac's motion to dismiss.

In the Home Equity Affidavit, Plaintiffs swore under oath that:

> [t]he extension of Credit is of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the fair market value of the Property on the date the extension of Credit is made.

Def.'s App. 28, ¶ E. In light of the Plaintiffs' sworn testimony in the Home Equity Affidavit regarding the principal amount of credit in relation to the fair market value of their property, the court concludes that Plaintiffs' pleadings in this regard are contradicted by the Home Equity Affidavit. The Home Equity Affidavit is therefore controlling. *See St. Luke's Episcopal Hosp.*, 355 F.3d at 377 ("If an exhibit attached to the complaint contradicts an allegation in the complaint, the exhibit controls."). The court therefore concludes that Plaintiffs' request for declaratory judgment, based on the alleged violation of Article XVI, section 50(a)(6)(B) of the Texas Constitution, fails as a matter of law and will be dismissed.

### 7.      Unjust Enrichment

Plaintiffs' request for unjust enrichment is equitable in nature and does not constitute an independent cause of action. Moreover, Plaintiffs' contention that PennyMac would be unjustly enriched if permitted to foreclose is mooted by the court's rulings as to Plaintiffs' claims. *DeFranceschi*, 837 F. Supp. 2d at 627. PennyMac is therefore entitled to judgment as a matter of law on Plaintiffs' request for declaratory judgment relief based on the equitable theory of unjust enrichment.

## IV.     Amendment of Pleadings

In response to PennyMac's Motion to Dismiss, Plaintiffs request to amend their pleadings in the event the court determines that they have failed to state a claim. PennyMac contends that Plaintiffs' request to amend should be denied because they failed to comply with the court's local rules, including Local Rule 15.1(b), which requires the movant to seek leave of court and provide a copy of the proposed amended pleading. PennyMac further asserts that because it is entitled to foreclose, any proposed amendment by Plaintiffs would be futile because they cannot amend in such a way to state a claim.

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Because the court has ruled that Plaintiffs' claims are not legally viable, no amount of artful or creative pleading of facts will permit Plaintiffs to state a claim upon which relief can be granted. The court therefore concludes that Plaintiffs cannot set forth any allegations to state a claim upon which relief can be granted regarding their quiet title claim or request for declaratory judgment, and that further attempts to amend would be futile and unnecessarily delay the resolution of this action. Accordingly, the court will not allow Plaintiffs an opportunity to amend their pleadings.

## V.      Conclusion

For the reasons herein stated, the court concludes that Plaintiffs have failed to state claims upon which relief can be granted for quiet title and declaratory judgment. The court therefore **grants** Defendant's Motion to Dismiss, and **dismisses** this action **with prejudice**. The court, as required by Rule 58 of the Federal Rules of Civil Procedure, will issue judgment by separate document.

**It is so ordered** this 28th day of November, 2012.

Sam A. Lindsay
United States District Judge